# Janosky v. Lehigh Valley Coal Company, Appellant.

*Mines and mining—"Mine"—Mine foreman—Anthracite Mine Act of June 2, 1891, P. L. 176.*

1. The owner of a mine is responsible for the negligence of his representative or vice-principal and if he claims immunity from liability under a statute he must show a strict compliance with its provisions.

2. A "mine" in contemplation of the Anthracite Mining Act of June 2, 1891, P. L. 176, is every operation for the purpose of mining coal, and it includes all the underground workings, excavations and shafts connected below the surface by tunnels and other ways and openings and operated by one general haulage, ventilation and mine railroad system; it does not include separate and distinct underground operations disconnected or operated by separate and distinct mining systems, whether such separate workings are under a common ownership or not.

3. The requirements of the Mining Act of June 2, 1891, are not satisfied where an owner, who operates two separate and disconnected mines as part of one colliery, has placed the underground workings of both mines in charge of a certified mine foreman, who employed another as assistant mine foreman and assigned him to duty in one of the mines. The employer must place a certified mine foreman in charge of the underground working of each operation or mine and the employment of one foreman, putting him in charge of more than one mine, is not a compliance with the statute.

4. The provisions of the act requiring the owner to authorize the mine foreman to employ assistants when he cannot personally carry out the provisions of the act does not authorize the foreman to employ an assistant for each separate underground operation of the owner and place him in charge of it so that the foreman may perform his duties as such in several mines. The foreman and his assistant are expected to perform their duties in the same mine, the latter being subject to the control and direction of the former.

*Negligence—Master and servant—Mines and mining—Failure to provide mine foreman—Liability of owner.*

5. In an action to recover damages for the death of plaintiff's son, who was employed in the mine of defendant company, it appeared that the company operated two mines, which were a half mile apart, and had no underground connection; that the

underground workings of both mines were placed in charge of a certified mine foreman; that the latter employed an assistant mine foreman and assigned him to duty in the mine in which decedent was killed; that the accident which caused the death was the fall of a piece of rock from the roof of a gangway, and was due to the negligent performance of the duty to remove the rock from the roof, which duty was by law vested in the mine foreman. *Held,* although the mine foreman might be in general charge of the mine, he was to be treated as vice-principal or superintendent of the defendant mine owner, in view of the failure of the defendant to provide a certified mine foreman for the particular mine in which the decedent was killed, and that the defendant company was liable for the injury suffered.

Argued April 14, 1913. Appeal, No. 13, Jan. T., 1913, by defendant, from judgment of C. P. Luzerne County, June T., 1909, No. 66, on verdict for plaintiff in case of John Janosky and Rose Janosky, parents of Enoch Janosky, v. Lehigh Valley Coal Company. Before Brown, Mestrezat, Elkin and Moschzisker. Affirmed.

Trespass to recover damages for death of plaintiffs' son. Before Garman, J.

The opinion of the Supreme Court states the case.

The court charged in part as follows:

"I say to you that in our judgment, and I say it to you as a matter of law, under the circumstances of this case, the portion where this accident occurred, is a mine of itself; and on that proposition we will subject ourselves to review not only by our court in banc, but by the higher courts of the State. The reason for making this decision is that if these underground workings be connected by gangways and tunnels and other passages, you will readily observe that they naturally become one institution, just as you might say of a double house, if doors are cut through so that the whole house may be used by one family, or for one purpose, it may become one house although built on the outside apparently as a double house; but if each one is separated by parti-

tions and shut off from the other, we always say that they are two houses. Using that as an illustration, I say to you that this was a mine, and I say to you as a matter of law, that the laws of Pennsylvania require that this mine should have had a foreman, and that in our contemplation of the law, a mine foreman cannot be foreman of separate mines—two or more mines not connected—he cannot be a mine foreman of separate mines; that each mine operated under the law as we understand it, must have its own mine foreman. If that be so, then it follows as a matter of logic that Mr. O'Brien, being a mine foreman for two or more mines, although the coal of these mines was broken by the same colliery, could not be a mine foreman in contemplation of law, but must bear to the company that employed him, the relation more of manager, or of vice-principal as we commonly say in a legal term, and if he could not be a mine foreman in contemplation of law then his assistant mine foreman could not be a mine foreman either, and must necessarily be an assistant of some kind in the management connected with his principal. That being our view of the law, we say to you that the defendant company could not get protection under the act of assembly on the ground that the injury may have been due to the negligence of a mine foreman or his assistant and that therefore they were absolved. I do not want you to understand me, however, to say that notwithstanding that ruling as to the law, you are obliged to find as a matter of fact that they were negligent, whatever their duties or whatever relation they sustained to the company or to the law. We are simply saying to you that the protection that usually exists because of the acts or omissions of a mine foreman, cannot apply to this particular case. The question will then come up whether or not there was negligence on their part as men in charge of the mine, in ascertaining whether or not there was a dangerous menace at the point in question; whether there was danger there which reasonable inspection or

reasonable care on their part as employees of the defendant company might have ascertained. If you find that there was not, or there was nothing there indicating danger, that in the ordinary course of the discharge of their duty they could have discovered by reasonable care, then you should give a verdict in favor of the defendant. If you find that there was the absence of ordinary care, that the precautions taken to ascertain danger were not sufficient, that the tapping of the roof at intervals of say thirty feet, as they said, the tapping of the walls, whatever tapping may have been done as shown by the testimony, at such intervals was not sufficient to bring them within the rule of ordinary care, then of course you may find for the plaintiffs in the action." (4)

The jury found a verdict for the plaintiff for $1,650 on which judgment was entered. Defendant appealed.

*Error assigned* was (1) in refusing binding instructions for the defendant and (4) charge to jury.

*J. B. Woodward,* with him *P. J. O'Neill* and *F. W. Wheaton,* for appellant.

*John H. Dando,* with him *Edward Lynch,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, May 22, 1913:

We agree with the learned court below that the Pittston shaft, where the plaintiffs' son received his injuries resulting in his death, was a mine in contemplation of the Anthracite Mining Act of June 2, 1891, P. L. 176. Article 18 of the act defines a "mine" as follows: "In this act, unless the context otherwise requires, the term 'coal mine or colliery' includes. every operation and work, both under ground and above ground, used or to be used for the purpose of mining and preparing coal ......The term 'mine' includes· all underground workings and excavations and, shafts, tunnels and other ways and openings; also all such shafts, slopes, tunnels and

other openings in course of being sunk or driven, together with all roads, appliances, machinery and materials connected with the same below the surface." A mine, therefore, in contemplation of the act is "every operation......for the purpose of mining" coal. It includes all the underground workings and excavations and shafts, connected below the surface by tunnels and other ways and openings, and operated by one general haulage, ventilation and mine railroad system. It does not include separate and distinct underground operations disconnected and operated by separate and distinct mining systems. The underground workings to constitute a mine may be small or large, may be reached by one or several shafts, but they must be connected and operated by one and the same system.

We cannot agree with the contention of the learned counsel for the appellant company that its several disconnected operations, called the Seneca colliery, constitute a mine within the statutory definition. Each operation is carried on by its own system of mining, and has no connection with any of the several other operations than that they have a common ownership and the coal is taken to the same breaker on the surface to be prepared for market. If this were the proper definition of a mine, whether several operations constitute a mine would depend solely upon whether they are owned by the same person or corporation. There is nothing in the act which will permit of such definition. On the contrary, the provisions relative to mine foremen clearly contemplate that the underground workings of a mine shall consist of a single and connected operation. The act provides that the owner of a mine or colliery shall place the underground workings thereof under the charge and daily supervision of a mine foreman who shall keep a careful watch over the internal workings so as to insure the safety of the miners. He is expected to personally carry out all requirements of the act pertaining to his duties and can only employ assistants

when he is unable to do so. He is employed because of his special fitness for the position and is expected to be present in the mine and give it his personal attention. If, however, a mine may consist of or include as many separate and distinct underground operations as are owned and operated by a single owner, it is clear, we think, that the mine foreman could not perform the duties imposed by the statute. He would be, as clearly appears in this case, a general superintendent having in charge the several separate underground operations and performing the duties imposed upon him personally by an assistant in each one of the several mines. In such case, the men employed in the mines do not have the protection of his personal supervision and control which the act manifestly intends. The foreman is selected for his special fitness for the position, and the efficient performance of his duties requires that he should be present in the mine over which he has supervision.

The defendant's two mines operated through the Pittston shaft and the Twin shaft are known as the Seneca colliery. The mines are at least half a mile apart and have no underground connection. Janosky was killed while he was at work in the Pittston vein which was reached by the Pittston shaft. The underground workings of both mines were placed in charge of Thomas O'Brien, a certified mine foreman. He employed Michael Eagan as assistant mine foreman and assigned him to duty in the Pittston vein. It is clear, we think, that the employment of O'Brien as mine foreman for the two mines was not a compliance with the Act of 1891 so as to make him a statutory mine foreman for the Pittston mine. Article 12 of the Act of 1891 provides that the owner shall place the underground workings of his mine or colliery and all that is related to the same under the charge and daily supervision of a competent person who shall be called "mine foreman." Section 6 of Article 8 imposes a penalty upon the owner "in case any mine is worked a longer period than thirty days without

such certified mine foreman." The owner is required to authorize the mine foreman to employ assistants when he cannot personally carry out the provisions of the act. There are several other provisions of the statute which clearly indicate the legislative intent that a foreman shall be employed for each separate operation or mine. The statutory duties imposed upon the mine foreman require that he shall be in the workings of the mine and give them daily supervision. As will be observed, he is only authorized to employ an assistant when he cannot personally carry out the provisions of the statute requiring him to be in the mine and personally direct the mining operations. The object of this provision of the statute is not to authorize the foreman to employ an assistant for each separate underground operation of the owner and place him in charge of it so that the foreman may perform his duties as such in several mines. The foreman and his assistant are expected to perform their duties in the same mine, the latter being subject to the control and direction of the former. If a mine foreman may be employed for more than one operation he may be employed and have charge of a dozen operations, distantly separated from each other, so that he can give none of them personal attention nor daily supervision which, as we have seen, would defeat the express provisions of the statute. We are of opinion that under the Act of 1891 the employer must place a certified mine foreman in charge of the underground workings of each operation or mine, and that the employment of one foreman and putting him in charge of more than one mine is not a compliance with the statute.

While engaged as a runner in the defendant's Pittston mine a large piece of black rock fell from the roof of a gangway on the plaintiffs' son from which he sustained injuries resulting in his death. The statement alleges that the gangway was negligently and carelessly maintained by failing to remove the rock from the roof. The defense is (a) that the mine was in charge of a certified

mine foreman and if the rock was negligently permitted to remain in the gangway it was his negligence for which the defendant is not liable, and (b) that the evidence failed to disclose any negligence on the part of the defendant. As pointed out above, the defendant company failed to comply with the statute and place the mine in charge of a certified mine foreman, and hence it is not in the position to invoke the rule that the mine owner is not responsible for the negligence of the mine foreman. It is true that O'Brien was in charge of this mine and directed its operations. But like any superintendent or manager he was acting for the owner in operating the mine, and therefore became a vice-principal for whose conduct the owner is liable for injury resulting from his negligence. The owner of a mine is responsible for the negligent acts of his representative or vice-principal, and if he claims immunity from liability through a statute he must show a strict compliance with its provisions. Eagan was employed by the defendant company as O'Brien's assistant and the two employees were directing the operations in the mine. For the negligence of either or both of these parties, the defendant is responsible to the injured party. The learned court correctly instructed the jury that "if you find that the defendant company was negligent by reason of the negligence of Mr. O'Brien and Mr. Eagan or both or either, in the performance of their duties, then you will determine whether or not the plaintiffs are entitled to compensation."

We think there was sufficient evidence of negligence to submit to the jury. Janosky was killed by a large stone called "black rock" falling on him from the roof of the gangway. It was concededly dangerous and was a menace to miners working in that vicinity. O'Brien testified that it was not safe for a miner to work under it as it was liable to fall at any time, and that he had ordered it to be removed wherever it was found. The plaintiffs claim, and introduced evidence to show, that

O'Brien and Eagan knew of this piece of black rock or by the exercise of ordinary care in inspecting the gangway they could have known of its existence. In fact, O'Brien testified that he "saw it there as I passed, and took it for granted it was safe." This testimony is difficult to understand in view of the fact that he had previously testified that all black rock was dangerous and likely to fall and, therefore, he had required it to be removed. Under the evidence, we think, the question of the defendant's negligence was for the jury.

The judgment is affirmed.